UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WENDELL BROOKS                                        CIVIL ACTION

VERSUS                                                NO. 09-3441

ROBERT TANNER, WARDEN                                 SECTION "F" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Record Doc. No. 20. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

Due to an initial delay in lodging of the state court record in this court, apparently resulting from damage caused by Hurricane Katrina to storage facilities in the Offices of the Orleans Parish Clerk of Criminal District Court and District Attorney, defendant filed a motion in this court on September 1, 2009 to compel production of the state court record.  Record Doc. No. 8.  The magistrate judge formerly assigned to this matter issued an order requiring the Clerk of Orleans Parish Criminal District Court to produce the record.  Record Doc. No. 10.  After a hearing, the clerk sent a letter dated October 22, 2009, to this court, submitting some materials and stating:  "[W]e have extensively searched for the records however, the only material we were able to find to date are (sic) attached to this letter.  At this point, we have not stopped searching for the relevant documents and will continue in our search efforts.  We will notify you if we find any other documents regarding this case."  Record Doc. No. 15.  No other documents were subsequently submitted by the clerk.

Thus, a scant state court record, consisting of three small volumes, was provided to this court in two phases.  Initially Volumes 1 and 2[2] of 2 were filed, followed by the

---

[2] Volume 2 of the initially filed state court record consists exclusively of copies of materials filed in this court's record in the captioned federal habeas corpus case, a copy of the Docket Master Sheet of the Orleans Parish Criminal District Court, and a letter from the Clerk of the Orleans Parish Criminal District Court dated September 18, 2009, stating:  "The closed record requested for file # 444-558 could not be located.  Due to Hurricane Katrina many files have been misplaced, damaged or destroyed."

supplemental Volume 1 of 1[3] delivered directly to this court by the Clerk of Orleans Parish Criminal District Court on October 22, 2009. Using these materials, together with the Master Docket Sheet of the Orleans Parish Criminal District Court and the additional copies of materials purporting to be state court records submitted by the parties, I have pieced together the following state court factual and procedural history.

Petitioner Brooks is currently incarcerated in the Rayburn Correctional Center in Angie, Louisiana. On January 8, 2004, he was charged by bill of information with manslaughter. On March 1, 2005, he pled guilty to an amended bill of information charging him with negligent homicide and to a multiple offender bill charging him as a three-time offender. On June 15, 2005, he was sentenced to a ten-year prison term.[4]

Brooks subsequently filed a pro se motion for reconsideration of his sentence and a motion to quash his multiple offender bill in the state trial court.[5] On June 24, 2005, the state trial court denied both motions, as reflected both in the clerk's minutes and in the court's judgment, which stated: "The defendant has already begun serving his

---

[3]The supplemental volume contains copies that are stamped "certified" by the Clerk of Orleans Parish Criminal District Court on October 22, 2009, of Brooks's habeas petition in this court, an updated Docket Master Sheet of the Orleans Parish Criminal District Court, orders of this court, and most of the state court orders that also appear in Volume 1 of the initially filed state court record. The supplemental volume contains none of the motions, applications or other written submissions of Brooks to the state courts during the subject proceedings.

[4]State Record, Vol. 1 of 1 (Docket Master, Orleans Parish Criminal District Court).

[5]An undated photocopy of the motion for reconsideration appears in Vol. 1 of 2 of the initially filed state court record.

3

sentence, which precludes this Court from considering the defendant's motion for reconsideration of sentence.  State v. Wimberly, 760 So.2d 355.  In his motion to quash the multiple bill, petitioner states no valid claims for relief requested."[6]  On July 15, 2005, Brooks filed an application for supervisory writs in the Louisiana Fourth Circuit Court of Appeal.  The state appellate court denied the application in an order filed two weeks later, stating:  "Relator did not attach a copy of his request to the instant writ application; consequently, there is nothing for this court to review."[7]

In the meantime, on July 19, 2005, Brooks signed, dated and submitted to the state trial court a handwritten pro se "Motion to Correct an Illegal Sentence Pursuant to La. C.Cr.P.Art. 882."  He raised three claims in this motion: (1) His sentence was illegally enhanced. (2) The sentence enhancement "was obtained by a form of [double] jeopardy." (3) His punishment was "cruel and excessive."[8]  The state trial court denied the motion on August 3, 2005, and entered judgment, stating in pertinent part:  "This Court has

---

[6]State Record, Vol. 1 of 2 (Minute Entry and Judgment, Orleans Parish Crim. D. Ct., 6/24/05).

[7]State Record, Vol. 1 of 2 (Order, Case No. 2005-K-1129, La. 4th Cir. App. 7/29/05).

[8]State Record, Vol. 1 of 2 (Motion to Correct an Illegal Sentence, Case No. 444-558, Orleans Parish Crim. D. Ct., 7/19/05).

4

completely reviewed the sentence in this case, and finds the sentence imposed to be legal."[9]

On August 5, 2005, Brooks filed an application for a supervisory writ in the Louisiana Fourth Circuit Court of Appeal.[10]  On August 22, 2005, Brooks signed and dated a pro se, handwritten "Appeal from Denial of Criminal District Court Section [J]," which bears the court's August 26, 2005 date-filed stamp, in which he seeks appellate review of the trial court's denial of his motion to correct an illegal sentence.[11]

On November 17, 2005, the Louisiana Fourth Circuit denied Brooks's applications, stating:  "Relator's motion for reconsideration of his sentence is not timely filed.  La.C.Cr. P. art. 881.1.  Furthermore, the claims asserted in relator's motions are without merit.  His sentence is legal."[12]

On July 19, 2006, Brooks signed and submitted a petition for writ of mandamus in the Louisiana Fourth Circuit Court of Appeal, which was filed by that court on July 25,

---

[9]State Record, Vol. 1 of 2 (Minute Entry and Judgment, Case No. 444-558, Orleans Parish Crim. D. Ct., 8/3/05).

[10]State Record, Vol. 1 of 2 (Case No. 2005-K-1254, La. App. 4th Cir., 8/5/05).

[11]State Record, Vol. 1 of 2.

[12]State Record, Vol. 1 of 2; State Record, Supp. Vol. 1 of 1 (Order, Case No. 2005-K-1254, La. App. 4th Cir. 11/17/05).

2006.[13]  In that petition, he alleged that, on or about May 18, 2006, he had signed and submitted to the state trial court a "motion for correction of illegal sentence; review of illegal sentence."[14]  In this motion, he had argued to the state trial court that his multiple bill was based on prior convictions that were too old to be used under the habitual offender statute; that the use of the multiple offender statute against him constituted "double jeopardy" and an improper enhancement of his sentence; and that his due process and equal protection rights had been violated.  In his mandamus petition, Brooks complained that the trial court had not ruled on his motion.  The Louisiana Fourth Circuit denied this application on August 16, 2006, stating:  "There is no review of sentencing errors post conviction.  La.C.Cr.P. art. 930.3; State ex rel Melinie, 93-1380 (La. 1/12/96), 665 So. 2d 1172."[15]

The state court record contains a letter from Brooks to the Clerk of the Louisiana Supreme Court dated September 4, 2006, forwarding a pro se Application for Writ of Certiorari to the Louisiana Supreme Court, seeking review of the lower courts' denial of his motion to correct an illegal sentence.  The same letter bears the signature of a

---

[13]State Record, Vol. 1 of 2 (Petition for Writ of Mandamus, Case No. 2006-K-0984, La. 4th Cir. App. 7/25/06).

[14]Id.; see also apparent attachment (Motion for Correction of Illegal Sentence, Case No. 444-558, Orleans Parish Criminal District Court, undated).

[15]State Record, Vol 1 of 2 (Case No. 2006-K-0984, Order of La. 4th Cir. App. 8/16/06).

6

Louisiana Supreme Court deputy clerk dated June 15, 2007 (the date that the writ application was ultimately denied).[16]  In this writ application, which is date-stamped as received by the Supreme Court on September 28, 2006, Brooks argued that the trial court erred in failing to conduct a contradictory hearing on the merits of his motion and that it was unlawful for the multiple bill filed against him to be based upon a prior conviction that was more than 10 years old.[17]  Brooks attached as exhibits to this writ application copies of various state court records, including a bill of information date-stamped as a true copy on June 24, 2005, which charged him with the killing of Timothy Cain and bears a handwritten notation by an Assistant District Attorney dated March 1, 2005, indicating that the bill had been "amended . . . to negligent homicide . . . as a result of a plea agreement[.  Defendant] will plead guilty as 3x Bill"; trial court minute entries reflecting Brooks's appearances in court with counsel on March 1, 2005, for his guilty plea to the negligent homicide charge and on June 15, 2005, for his sentencing; copies

---

[16]State Record, Vol. 1 of 2 (La. S. Ct. Case No. 2006-KH-2376, letter from Brooks dated 9/04/06 and dated 6/15/07 by the deputy Clerk of Court).  No explanation appears in the record for the Clerk's signature on this letter nine months after the date of the letter.  The handwritten signature and other elements of the Clerk's information appear to be identical to those same elements on the Supreme Court's subsequent denial order dated June 15, 2007.  Brooks's letter in the state court record is a copy on legal-sized paper, but the original might have been on letter-sized paper.  If it was, it appears possible that the Clerk's dated signature at the bottom of the letter might accidentally have been transferred there during the process of copying the Supreme Court's record on legal-sized paper.

[17]State Record, Vol. 1 of 2 (Application for Writ of Certiorari at p. 5, Case No. 06-KH-2376, La. S. Ct., 9/4/06).

of his lower court pleadings and the state Fourth Circuit's order of August 16, 2006; and

the multiple offender bill of information filed against him on June 24, 2005.[18]

On June 15, 2007, the Louisiana Supreme Court denied this application for

supervisory and/or remedial writs, citing La. Code Crim. P. article 930.3 and State ex rel.

Melinie v. State, 665 So. 2d 1172 (La. 1996).[19]

Shortly thereafter, it appears that Brooks filed a pro se form Uniform Application

for Post-Conviction Relief in the state trial court.[20]   In that application, Brooks asserted

three claims:   (1) His sentence was erroneously enhanced using convictions that had

already been used to enhance an earlier sentence imposed against him in a prior multiple

bill.   (2) His counsel was ineffective because counsel failed to object to the habitual

offender proceedings and sentence. (3) Brooks was subjected to double jeopardy because

---

[18]Id. at attachments.

[19]State Record, Vol. 1 of 2; State Record, Supp. Vol. 1 of 1 (Order, Case No. 2006-KH-2376, La. S. Ct. 6/15/07). In Melinie, the Louisiana Supreme Court ruled that claims of errors in sentencing should be raised on direct appeal and are not proper grounds for post-conviction relief.  Melinie, 665 So. 2d at 1172 (citing La. Code Crim. P. art. 930.3); State ex rel. Glover v. State, 660 So. 2d 1189, 1194, 1196-98 (La. 1995); State v. Gibbs, 620 So. 2d 296 (La. App. 3d Cir. 1993), abrogated in part on other grounds by State ex rel. Olivieri v. State, 779 So. 2d 735 (La. 2001)).

[20]State Record, Vol. 1 of 2 (application to Orleans Parish Criminal District Court, dated by Brooks 8/17/07 and 9/4/07).   The state court record contains two almost identical copies of this application, except that one is signed by Brooks on August 17, 2007 and one is signed on September 4, 2007.  The uniform application dated September 4, 2007 is attached as an exhibit to a petition for a writ of mandamus filed by Brooks in the Louisiana Fourth Circuit Court of Appeal in December 2007, Case No. 2007-K-1631.   The application dated August 17, 2007 is attached as an exhibit to petitioner's application for writ of certiorari filed in the Louisiana Supreme Court in February 2008, Case No. 2008-KH-450.  The state trial court docket master contains no reference to or notation of this application for post-conviction relief.

the same weapon used to convict him of one offense in 2001 was used as evidence to convict him of the instant offense in 2005.  Brooks attached as exhibits in support of this application various copies of state court records concerning his prior criminal cases.  The exhibits include the multiple bill of information filed against him on April 22, 1996 in Case No. 372-730 in connection with his guilty plea and sentencing on that date to unauthorized entry of an inhabited dwelling, which refers to his earlier guilty plea on May 1, 1992 to possession of cocaine in Case No. 355-903; the multiple bill of information filed against him on June 24, 2005 charging him with negligent homicide in Case No. 444-558, which again refers to his same earlier convictions; and the state trial court's minute entries reflecting Brooks's appearance in that court on March 1, 2005 (at which he pled guilty to both the negligent homicide charge and the multiple bill as a third offender).

On December 10, 2007, Brooks signed and submitted a Petition for Writ of Mandamus to the Louisiana Fourth Circuit Court of Appeal, which was filed by the appellate court's clerk on December 21, 2007.  Brooks complained that he had filed his post-conviction application with the state trial court on September 9, 2007, but that the trial court had not yet addressed it.[21]  On January 15, 2008, the court of appeal denied this

---

[21]State Record, Vol. 1 of 2 (Case No. 2007-K-1631, Petition for Writ of Mandamus, filed 12/21/07).

9

writ application, stating:  "This court has reviewed the claims raised by relator in his application for post-conviction relief and finds that he is not entitled to relief.  Therefore, his request for mandamus is denied."[22]

On February 8, 2008, Brooks signed and submitted to the Louisiana Supreme Court a pro se Application for Writ of Certiorari from the lower courts' denial of his application for post-conviction relief, which was received and filed by the Supreme Court Clerk on February  28, 2008.[23]   In this application, Brooks argued that (1) the lower courts erred when they adjudged him a habitual offender and employed a "double use of enhancement" to sentence him, and (2) his counsel was ineffective for failing to object to the multiple bill proceedings.  On November 10, 2008, the Louisiana Supreme Court

---

[22]State Record, Vol. 1 of 2; State Record, Supp. Vol. 1 of 1 (Case No. 2007-K-1631, Order of La. App. 4th Cir. 1/15/08).

[23]State Record, Vol. 1 of 2 (Application for Writ of Certiorari, Case No. 08-KH-450, La. S. Ct., dated 2/8/08 and filed 2/28/08).

denied this application, citing Louisiana Code of Criminal Procedure articles 930.8 and

930.3, <u>Glover</u>, 660 So. 2d at 1189,[24] and <u>Melinie</u>, 665 So. 2d at 1172.[25]

II.    <u>FEDERAL HABEAS PETITION</u>

On May 1, 2009, the clerk of this court filed Brooks's petition for federal habeas

corpus relief, in which he asserts three grounds for relief:  (1) The trial court improperly

adjudged him to be a habitual offender under state law by "double use of enhancement;"

specifically, the use of the same prior conviction that was used to enhance his earlier

sentence on April 22, 1996 for a prior conviction, rendering his sentence excessive.

(2) His counsel was ineffective because counsel failed to object to the habitual offender

multiple bill.   (3) Petitioner's double jeopardy rights were violated because the same

evidence (a weapon) used to convict him of attempted possession of a firearm in 2001

was the basis of his guilty plea to the negligent homicide charge in this case.[26]

The State filed a response in opposition to Brooks's petition in which it argued

only that his claims are time-barred.[27]

---

[24]In <u>Glover</u>, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under article 930.8, even if the lower court addressed the merits or did not consider timeliness.  <u>Id.</u> at 1201-02.

[25]State Record, Vol. 1 of 2 and Vol. 1 of 1 (Order, Case No. 2008-KH-0450, La. S. Ct. 11/10/08).

[26]Rec. Doc. No. 1.

[27]Rec. Doc. No. 14.

III.    STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[28] and

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Brooks' petition, which, for reasons discussed below, is deemed filed in this

federal court on April 27, 2009.[29]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

---

[28]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  U.S. v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Brooks's petition was filed by the clerk of this court on May 1, 2009.  Brooks's signature on the petition is dated April 27, 2009.  Thus, this is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State makes no argument other than that Brooks's petition is untimely.

(A)    TIMELINESS AND EXHAUSTION

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[30]  Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  A federal habeas petition is untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of two ways.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only

---

[30]The statute of limitations provision of the AEDPA provides for other triggers, which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

when the petitioner has pursued his rights diligently and when rare or extraordinary circumstances exist that prevented timely filing.  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010);  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); accord Cooley v. Medina, No. 10-1485, 2011 WL 6587, at *2 (10th Cir. Jan. 3, 2011); Medley v. Thaler, No. 08-11009, 2010 WL 4459836, at *4 (5th Cir. Nov. 9, 2010); Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010).

Second, the AEDPA itself provides for interruption of the one-year limitations period:  "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).  For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)").  The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  Carey v. Saffold, 536 U.S. 214, 219-

14

20 (2002); Williams v. Cain, 217 F.3d 303, 310 (5th Cir. 2000) (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

In the instant case, while the state court record is sufficient to permit this court to address petitioner's claims, I cannot conclude that it is sufficiently clear  to support a finding that the petition is time-barred, as the State argues.  Because of the Hurricane Katrina-related loss of or damage to the state trial court's record reported to this court by the Clerk of Orleans Parish Criminal District Court, the state court record is virtually devoid of any original or file-stamped copies of anything that Brooks may have submitted to the state trial court after his guilty plea.  What can be discerned about Brooks's state trial court filings post-Katrina comes principally from copies of his pleadings that he attached as exhibits to his state appellate court filings.  Many of those copies are undated and unsigned, and it cannot be determined with certainty when he filed them, much less when he delivered them to prison officials for mailing so that the applicable statute of limitations may have been tolled by virtue of the "mailbox rule."

Particularly troublesome for purposes of calculating tolling of the AEDPA one-year statute of limitations period are two separate applications allegedly filed in the state trial court by Brooks in 2006 and 2007.  Both were ultimately addressed by the Louisiana Fourth Circuit Court of Appeal after Brooks filed mandamus petitions in that court,

15

complaining that he had filed the applications but that the state trial court had not addressed them.  Neither application appears in the trial court record, and neither is even noted on the state trial court's docket master.  This kind of uncertainty makes a trustworthy AEDPA statute of limitations calculation impracticable.

The only certain lapses for AEDPA statute of limitations purposes are about three weeks between the date of the last action by the state Fourth Circuit on January 15, 2008 concerning Brooks's various lower court applications and the date of his final writ application to the Louisiana Supreme Court.  It is also clear that about five (5) months lapsed between the Louisiana Supreme Court's last order dated November 10, 2008, concerning Brooks's petitions to that court, and the April 27, 2009 "mailbox rule" filing date of his petition in this court.  Beyond that, based on the contents of the state court record before me, I cannot determine how many months of the one-year AEDPA statute of limitations period may have lapsed between finality of his conviction and filing of the petition in this court, during which Brooks also had no pending appeal or post-conviction proceedings pending in the state courts.  Because of my lack of confidence in this calculation based on the gaps in the state court record, I cannot recommend that the petition be dismissed as untimely, as the State argues.

The State has not argued that Brooks failed to exhaust his state court remedies. Again, my review of the scanty available state court record seems to indicate that Brooks

16

asserted all three claims raised in the current federal petition through the state courts in his two, separately filed and ultimately denied Louisiana Supreme Court applications.

(B)    PROCEDURAL DEFAULT/BAR

For the following reasons, however, I find that these claims are procedurally barred and may not support habeas relief in this court.  The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim.  Nobles, 127 F.3d at 420.  This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered.  Fisher v. State, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

In this case, the State has not urged that Brooks's claims are procedurally barred from review. Because the state courts' rulings guide this court's review of Brooks's claims, the court will consider the bars under the state law provisions relied upon by the state courts, since none have been raised in respondent's opposition.

Thus, to the extent necessary, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Magouirk, 144 F.3d at 348.

17

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Although much of the procedural history of Brooks's case is convoluted, the state court record clearly demonstrates that the ultimate resolution of the three claims raised in the instant habeas petition occurred in the two decisions of the Louisiana Supreme Court in Case Nos. 2006-KH-2376 dated June 15, 2007, and 2008-KH-0450 dated

18

November 10, 2008, which relied on Louisiana Code of Criminal Procedure articles 930.3 and 930.8, Melinie, 665 So. 2d at 1172, and Glover, 660 So. 2d at 1189. The bars imposed by the Louisiana Supreme Court indicate that Brooks's claims, now before this court, were inappropriate for post-conviction review, untimely and procedurally impermissible under Louisiana law.

(1)    INDEPENDENT AND ADEQUATE

For the foregoing state law procedural bars to prevent review by this federal habeas court, the bars must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Glover, 128 F.3d at 902.

In its June 15, 2007 order dismissing Brooks's claims concerning his multiple offender conviction and sentence, the Louisiana Supreme Court relied upon Louisiana Code of Criminal Procedure article 930.3 and Melinie, which clearly indicates that the claims were barred from review because they were not appropriately raised on post-conviction review. This court has repeatedly held that both Melinie and Louisiana Code of Criminal Procedure article 930.3 are independent and adequate state grounds for dismissal, which bar review by the federal courts in a habeas corpus proceeding. See,

19

e.g., Neal v. Kaylo, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Article 930.3 and Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); Ardis v. Cain, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).  I find that the bar imposed under Louisiana Code of Criminal Procedure article 930.3 and Melinie is also independent and adequate to bar review of the merits of Brooks's similar claim in the instant habeas petition.

In its November 10, 2008 order, the Louisiana Supreme Court relied upon Louisiana Code of Criminal Procedure article 930.8, Glover, and again on Melinie and Louisiana Code of Criminal Procedure article 930.3 in denying Brooks's new writ application, including his "double . . . enhancement," double jeopardy and ineffective assistance of counsel arguments.

The United States Fifth Circuit Court of Appeals held in Glover v. Cain that denial of relief premised on the untimeliness of a claim under article 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine.  Glover, 128 F.3d at 902.  The same is true in this case.  The Louisiana Supreme Court's November 10, 2008, ruling was clear and express in its reliance on article 930.8 and State ex rel. Glover when denying Brooks's writ application.

20

The Fifth Circuit has also squarely held that, because "Louisiana courts have regularly invoked [article 930.8] to bar untimely claims," it is an "adequate" rule, i.e., it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." Id. (citing Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989); Johnson v. Miss., 486 U.S. 578, 587 (1988); Amos, 61 F.3d at 339).

Because the Louisiana Supreme Court's decision rested on an independent and adequate state rule of procedural default, this court may not review Brooks's claims.

(2)    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." Id. (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

In this case, Brooks has not offered any cause for the default which would excuse the procedural bars imposed by the Louisiana courts. My review of the record does not support a finding that any factor external to the defense prevented Brooks from raising these claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

(3)     FUNDAMENTAL MISCARRIAGE OF JUSTICE

Brooks may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now

22

available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Brooks does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction. His claims address alleged procedural failings in the underlying criminal proceedings and habitual offender sentence, not his actual innocence. He presents no evidence or argument of innocence that was not already presented to and resolved by the state courts.

For these reasons, Brooks has failed to overcome the procedural bar to his claims, and they should be dismissed with prejudice for that reason.

(C)    MERITS REVIEW

Even assuming that all or any of Brooks's claims are not procedurally barred as outlined above, I find that his claims are meritless and cannot serve as the basis for federal habeas corpus relief. Title 28 U.S.C. §§ 2254(d)(1) and (2) contain the standards

23

of merits review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

24

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); accord Bell v.

Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard,

"the only question for a federal habeas court is whether the state court's determination

is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002).  The

burden is on the petitioner to show that the state court applied the precedent to the facts

of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting

Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

(1)   ERRONEOUS OR EXCESSIVE HABITUAL OFFENDER SENTENCE

Brooks alleges that the state trial court erred in finding him a multiple offender.

Specifically, he argues that "[o]n April 22, 1996 Docket # 372-730 Judge Ike Spears

Section C Petitioner was sentenced to 3 Yrs D.O.C. under 15:529.1 using Prior case #

372-730 (4-22-1996) and case #355-903A (5-1-1992). On 3-1-2005 under case #444-

558 Judge Darryl D[e]rbigny Section "J" petitioner was sentenced to 10 Yrs under

15:529.1 using prior enhancement that was used on the first enhancement in April 22,

1996."[31]   Brooks offers no further explanation or briefing concerning this claim.

Construed broadly, Brooks may be arguing both that the state courts misapplied the

Louisiana Habitual Offender Statute under Louisiana's own statutory law and that this

misapplication resulted in an unconstitutional excessive sentence.

Brooks's first argument exclusively under Louisiana law cannot serve as a valid

basis for federal habeas relief. The application and interpretation of Louisiana's habitual

offender statute is an issue of state law that this court must leave to the Louisiana

Supreme Court. A state's failure to follow its own sentencing procedures is not

reviewable through federal habeas corpus proceedings. Joseph v. Butler, 838 F.2d 786,

789 n.2 (5th Cir. 1988); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987). A federal

court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to

review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994)

(quotation omitted).

---

[31]Record Doc. No. 1 (Form Habeas Petition at p. 3, ¶ 12(A)).

Instead, this court's analysis must focus on due process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair. Lisenba v. Calif., 314 U.S. 219, 236-37 (1941); Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986). A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial. Id.; Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991).

As the basis for his challenge before this court, Brooks alleges that his proceedings were unfair because in 1996 the State used an earlier 1992 conviction to enhance his sentence as a two-time offender for a second conviction in 1996, and then used that same 1992 conviction to enhance his sentence as a three-time offender in 2005. This appears to be exactly the purpose and result Louisiana sought to impose on career criminals as a sentencing matter when it enacted its habitual offender statute, La. Rev. Stat. § 15:529.1.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Shelton, 621 So. 2d 769 (La. 1993); State v. Staggers, 860 So. 2d 174, 180 (La. App. 5th Cir. 2003) (citing State v. Davis, 829 So. 2d 554 (La. App. 5th Cir. 2002)); State v. Warfield,

859 So. 2d 307, 310 (La. App. 2d Cir. 2003). Section 15:529.1 places no limitations on the re-use of a prior conviction for sentencing enhancement purposes when a recidivist like Brooks reappears for sentencing on subsequent crimes.

The only statutory limitation is time-based, and Brooks has argued that his first conviction in 1992 should not have been used to enhance his current sentence in light of the statutory time limit. The statute provides, in pertinent part:

> The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, . . . or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.

La. Rev. Stat. § 15:529.1(C) (emphasis added).

The defendant has the burden of proof to show that a prior conviction may not be used in the enhancement. Id. § 15:529.1(D)(1)(b). Brooks has not shown that the state courts improperly calculated the Louisiana statutory ten-year period because he fails to show that the maximum sentences for each offense and any "period of servitude . . . in a penal institution" was not properly used in the calculation.

28

Brooks's assertion that Louisiana should have a different statutory sentencing scheme or that calculation of the ten-year period should run exclusively from the dates of conviction, rather than the maximum sentence or imprisonment dates, fails to state a cognizable federal habeas corpus claim. "The Due Process Clause does not . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." Parke v. Raley, 506 U.S. 20, 32 (1992) (quoting Medina v. Calif., 505 U.S. 437, 451 (1992)). Enhancement proceedings are not determinative of guilt or innocence and do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. Buckley v. Butler, 825 F.2d 895, 902-03 (5th Cir. 1987).

Brooks has not identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation, and my research has located none. Claims that a state court improperly applied state law do not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67 (1991). For the foregoing reasons, Brooks is not entitled to relief on this claim. The denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent.

In this regard, Brooks may also be arguing that his enhanced 10-year prison sentence for negligent homicide is unconstitutionally excessive. The United States Supreme Court has recognized the constitutionality of state recidivist statutes, such as

La. Rev. Stat. § 15:529.1, on numerous occasions.  Rummel v. Estelle, 445 U.S. 263 (1980); Ewing v. Calif., 538 U.S. 11 (2003).  Like other recidivist statutes, the Louisiana Habitual Offender Law is a penalty enhancement statute that only addresses itself to the applicable sentencing range and sentencing powers of the state court, not to defendant's innocence or guilt.  State v. Parker, 845 So. 2d 546 (La. App. 1st Cir. 2003); State v. Morgan, 686 So. 2d 1048 (La. App. 5th Cir. 1996); State v. Mayweather, 677 So. 2d 594 (La. App. 2d Cir. 1996).

The United States Supreme Court has held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."  Solem v. Helm, 463 U.S. 277, 284 (1983).  "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  U.S. v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel, 445 U.S. at 274-76).  Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes v. Butler, 825 F. 2d 921, 923-24 (5th Cir. 1987).  Thus, a federal habeas court will not upset a state sentence within the statutory limits unless the sentence is so disproportionate to the offense as to be completely arbitrary and shocking. When a defendant's sentence is the maximum sentence determined under the Louisiana Habitual Offender Law, it is within the

statutory limit.  Hensley v. Cain, No. 07-1423, 2008 WL 3365690, at *8 (E.D. La. Aug. 7, 2008) (Berrigan, J.).

In analyzing a claim that a sentence is excessive, the court "will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence.  Only if we infer that the sentence is grossly disproportionate to the offenses will we then . . . compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992) (emphasis added).

The United States Court of Appeals for the Fifth Circuit has noted that the Supreme Court's decision in Rummel "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F. 3d at 943.  In Rummel, the Court upheld a life sentence for a Texas fraud recidivist convicted of obtaining $120.75 under false pretenses.  In Gonzales, the Fifth Circuit stated "with certainty that the life sentence approved in Rummel falls on the constitutional side, thereby providing a litmus test for claims of disproportionate punishment." Id.

Applying this "litmus test" to Brooks's claim compels the conclusion that his ten-year prison sentence under the Louisiana Habitual Offender Law for negligent homicide was not unconstitutionally excessive.  First, it falls within the statutory maximum for three-time offenders, like Brooks, in the Louisiana Habitual Offender statute, which

states in pertinent part:  "If the third felony is such that upon first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:  (a) the person shall be sentenced to imprisonment for a determinate term . . . not more than <u>twice the longest possible sentence prescribed for a first conviction</u> . . . ."  La. Rev. Stat. § 15:529.1(A)(3)(a) (emphasis added).  The maximum sentence for a first offense of negligent homicide under Louisiana law was five (5) years in prison.  <u>Id.</u> § 14:32(C).  Thus, Brooks's ten-year sentence for negligent homicide as a three-time offender was within the Habitual Offender Law's statutory maximum ("twice the longest possible sentence . . . for a first conviction").  This was well within the <u>Rummel</u> life imprisonment "litmus test" employed by the Fifth Circuit, and this court must conclude that Brooks's ten-year sentence was not grossly disproportionate in light of his prior record of convictions.  Because it is clear that the sentence imposed in the instant case is not grossly disproportionate, this court's "inquiry is finished," <u>Gonzales</u>, 121 F.3d at 942, and it is unnecessary to compare Brooks's sentence to sentences for similar or the same crimes in Louisiana or in other jurisdictions.

Nothing Brooks has presented indicates that his sentence was unconstitutionally excessive.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Brooks is not entitled to federal habeas corpus relief on this claim.

(2)     INEFFECTIVE ASSISTANCE OF COUNSEL

Brooks argues that his counsel's performance was ineffective solely on the ground that his lawyer's performance resulted "in an illegal multiple bill" when counsel erred in "not objecting to the multiple bill."[32]  The Louisiana Supreme Court denied his writ application asserting a similar argument in its November 10, 2008 order.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; accord U.S. v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

---

[32]Record Doc. No. 1 (Habeas Petition at p. 3 ¶ 12(B)).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under <u>Strickland</u>, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley</u>, 18 F.3d at 1226 (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a

particular act or omission of counsel was unreasonable in the harsh light of hindsight."

Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

In this case, the record contains a copy of a bill of information that is stamped filed by the Orleans Parish Criminal District Court Clerk on June 24, 2005, charging that Brooks "unlawfully killed Timothy Cain."  In what appears to be the handwriting of Assistant District Attorney Kellie Rish of the Homicide Division, who signed it, the following note appears on the bill of information:  "3/1/05 State amended bill of information to negligent homicide 14:32 as a result of a plea agreement.  Δ [defendant] will plead guilty as 3X Bill.  This case/this defendant only."[33]

Brooks concedes that he had already been convicted of other felonies twice before. He entered a plea of guilty to negligent homicide and as a three-time offender in response to the multiple bill, all consistently with the assistant district attorney's notation.  His counsel was well within the range of professional performance in not challenging a multiple bill to which Brooks was pleading guilty as part of an arrangement to reduce a then-pending charge against him from manslaughter to negligent homicide.  Brooks can show neither defective performance nor prejudice.

---

[33]State Record, Vol. 1 of 2 (Exhibit "A" to Application and Memorandum in Support of Application for Writ of Certiorari, La. S. Ct. Case No. 06-KH-2376, 9/4/06).

Failure of counsel to assert a meritless objection is not constitutionally defective assistance.  Brooks has not suggested that his guilty plea was improperly accepted or that he was not guilty of his two prior convictions or the negligent homicide to which he was pleading guilty.  Because his plea was properly accepted and he was in fact a third-time offender and recidivist, there was no reason for his counsel to challenge the multiple bill.  Counsel's failure to make a frivolous or baseless objection is not deficient performance falling below an objective level of reasonableness.  Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998).

For the foregoing reasons, Brooks has failed to establish that his counsel's performance was deficient or prejudicial.  The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, Strickland.  Brooks is not entitled to relief on this claim.

(3)   DOUBLE JEOPARDY

Brooks argues that the constitutional prohibition against double jeopardy was somehow violated when the "same weapon" that was evidence against him when he was convicted of possession of a firearm in Case No. 423-394 on November 28, 2001, was used as evidence against him, "same weapon that shot victim," in his negligent homicide Case No. 444-558.  He complains that "[t]he same evidence used to convict petitioner in

2001 is the same evidence used in case # 444-558," the specific conviction he challenges in this habeas petition.[34]

The double jeopardy clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The Supreme Court has held that the double jeopardy clause protects against successive prosecutions <u>for the same offense</u> after acquittal or conviction and against multiple criminal punishments <u>for the same offense</u>. <u>See</u> <u>N. Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969).

Double jeopardy clause protections are inapplicable to sentencing proceedings because the determinations at issue do not place a defendant in jeopardy for an "offense." <u>Monge v. Calif.</u>, 524 U.S. 721, 727 (1998) (citing <u>Bullington v. Mo.</u>, 451 U.S. 430, 438 (1981); <u>Nichols v. U.S.</u>, 511 U.S. 738, 747 (1994)). The Court has also held that the states have a valid interest in determining and segregating habitual offenders and are free to define the type of conviction that may be used in the proceedings, although that freedom is not unlimited. <u>Parke</u>, 506 U.S. at 27.

The Supreme Court does not consider sentence enhancements to be additional punishment for a previous offense; rather, they act to increase a sentence "'because of the manner in which [the defendant] committed the crime of conviction.'" <u>Monge</u>, 524

---

[34]Record Doc. No. 1 (Habeas Petition at ¶ 12(C)).

U.S. at 727-728 (quoting U.S. v. Watts, 519 U.S. 148, 154 (1997)) (citing Witte v. U.S., 515 U.S. 389, 398-399 (1995)).  An enhanced sentence imposed on a multiple offender is not a new jeopardy or additional penalty for the earlier crime, but is instead a heightened penalty for the latest conviction.  Id. (citing Gryger v. Burke, 334 U.S. 728, 732 (1948)); see Moore v. Mo., 159 U.S. 673, 678 (1895) ("the State may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for subsequent offences than for a first offence").

In this case, Brooks was not placed twice in jeopardy of a conviction on the same offense.  Instead, he was properly charged as a multiple offender.  The use of the same gun as evidence to support both his conviction for illegal possession of that gun in 2001 and his conviction for negligent homicide in 2005 using that gun to kill does not mean that he was placed in jeopardy twice for the same offense.  It means simply that he was convicted of using the gun twice to commit two separate offenses.  Brooks is not entitled to the protections of the double jeopardy clause where he was not placed in jeopardy twice within the meaning of the Constitution.  Brooks has failed to establish that the state court's denial of relief was contrary to or in violation of established Supreme Court precedent.

38

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Wendell Brooks for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[35]

New Orleans, Louisiana, this ___24th___ day of February, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[35]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

39